HARRY L. SMITH *vs.* EDWARD M. LAWRENCE, and another.

Washington.    Opinion October 10, 1903.

*Broker.    Holder of Option.    Commissions,* Action for Compensation.
*Sales.    Contracts.    Evidence,* Hearsay.

1.  A real estate broker undertaking to sell the real estate of another earns
    nothing until he produces to the owner a customer, willing and prepared
    to purchase and pay for the property at the price and on the terms given
    by the owner to the broker.   All his expenditure of time, labor and money
    are at his own risk to be recouped only in case of success.   The same rule
    applies to the holder of an option.

2.  Upon the issue whether the owner of real estate during the continuance
    of an option given upon it offered to sell it to another party at less than
    the option price, a statement made by such party to the witness that such
    an offer had been made to him is not admissible evidence against the
    owner.   It is mere hearsay.

3.  The fact that during the continuance of an option the owner bargains
    the property to a third party, but contingently upon the failure of the
    option holder to comply with the terms of his option, does not alone con-
    stitute a breach of the option by the owner.

4.  Upon the issue whether the owner, during the continuance of an option,
    dissuaded a probable customer of the option holder from purchasing from
    him, evidence that the owner and the customer had several interviews
    and, after the termination of the option, entered into a contract relative
    to the land, does not alone prove dissuasion by the owner.   The customer
    may nevertheless have first of his own motion abandoned the option
    holder, and then have sought and persuaded the reluctant owner.

5.  The affirmative of such an issue is not sustained so long as the evidence
    merely justifies suspicion or surmises, or so long as the negative may, after
    all, be consistent with the evidential facts.

6.  A proposition is not proved until the evidence becomes inconsistent
    with the negative.

7.  *Held;* that the evidence in this case does not amount to proof of the
    propositions advanced by the plaintiff.

On motion and exceptions by defendants.    Motion sustained.

Assumpsit to recover $6,250 for services alleged by the plaintiff to
have been rendered by him for the defendants in procuring a pur-

chaser of real estate.   Plea, general issue.   Verdict for plaintiff for $2,750.

The disposition of the case upon the motion for a new trial made by the law court renders a report of the bill of exceptions immaterial.

The case is stated in the opinion.

*H. H. Gray; W. R. Pattangall and H. L. Smith,* for plaintiff.

*J. H. Gray; G. M. Hanson and A. St. Clair,* for defendants.

SITTING:   WISWELL, C. J., EMERY, STROUT, SAVAGE, SPEAR, JJ.

EMERY, J.   From the uncontradicted evidence and the evidence for the plaintiff, laying aside for the present the disputed evidence for the defendant, we think the following facts appear:—

Prior to February 1, 1902, Daniel W. Smith, the plaintiff's father, was a copartner with Edward M. Lawrence and Elias P. Lawrence, the defendants, in a partnership owning and operating timberlands, lumber mills, &c., in Jonesboro, Washington County.   Smith's interest was small, only about $1250, while the interest of the Lawrences was about $34,000.   On the date above named, February 1, 1902, the partnership being somewhat in debt and the parties being desirous of closing up the partnership affairs, the Lawrences agreed with Smith in writing to convey to him or his assigns all their interest in the property and partnership for $34,000 and the payment of all the partnership debts, if so purchased before February 20, 1902. This agreement was subsequently extended to March 20, 1902.

Mr. Daniel W. Smith under the above agreement expended much labor and money in efforts to find a purchaser for the property.   His son Harry L. Smith, the plaintiff, also expended much labor and money in his father's behalf in the same effort.   Among others whom they sought to interest in the matter, was a Mr. Grimes, an experienced lumberman.   Mr. Grimes tried to organize a syndicate including some Rockland parties to purchase the property, but never got them to the point of actually agreeing to purchase.   Finally, on March 18, 1902, Mr. Daniel W. Smith abandoned all further efforts to find a purchaser and so notified the Lawrences.   It was then

orally agreed that Daniel W. Smith should convey and assign his interest in the partnership to the Lawrences for $1250 and a deed by him and a note by the Lawrences to that effect were executed and deposited in escrow, and afterwards delivered. The Lawrences then orally agreed with Harry L. Smith, the plaintiff and the son of Daniel, that he might have till May 1, 1902, to find a purchaser for the property at $34,000, plus the $1,250 to be paid his father and plus the debts of the partnership, $7,500, or $42,750, in all. Under this agreement Mr. Harry L. Smith and Mr. Grimes continued their efforts to find a purchaser. The price they were endeavoring to obtain for the property was $49,000, which would give the plaintiff a margin or profit of $6,250.

Mr. Grimes finally induced several men to consider the proposition to purchase with him at $49,000, among whom were Mr. Taylor, Mr. Oak and Mr. Wing, the latter a Rhode Island capitalist of experience in timber lands and mills. He arranged for these men to go to Jonesboro with him to examine the property with reference to purchasing it. They arrived there, Mr. Wing with them, on April 4. Mr. Wing made some examination of the property, but finally on April 7, 1902, declined to purchase. This dissolved the syndicate, none of the other men being willing to purchase without Mr. Wing, and Mr. Grimes withdrew from the scheme and so notified the plaintiff. No further efforts were made by the plaintiff to find a purchaser and he allowed his option to lapse without further action.

Up to this point it is clear, and indeed conceded, that the plaintiff had not earned any commissions and is not entitled to recover for any expenditure of time, labor or money in his efforts to find a purchaser. A real estate broker undertaking to sell the real estate of another earns nothing until he produces to the owner a customer, willing and prepared to purchase and pay for the property at the price and on the terms given by the owner to the broker. All his expenditure of labor and money are at his own risk to be recouped only in case of success. *Garcelon* v. *Tibbetts,* 84 Maine, 148, and cases cited.

But the plaintiff claims that his failure to bring the proposed customer to the point of actual purchase at his price of $49,000 was

caused by the interference of the defendants in offering to sell to his customers at a much less price viz, $34,000, or in persuading Mr. Grimes to abandon the plaintiff and become a purchaser of part of the property on his own account at a less rate.   The first question raised by this claim is whether there is sufficient evidence to sustain it in fact, if good in law.   The following circumstances are testified to and relied upon as sufficient for that purpose:— While Mr. Wing and others of the proposed syndicate were examining the property and consulting about it at Machias and Jonesboro April 5, 6 and 7, Mr. Grimes and one or the other of the Lawrences were together several times.   After the dissolution of the prospective syndicate by the withdrawal of Mr. Wing and he and the others had left on April 7, Mr. Grimes remained at Machias, the headquarters of the conferences, and the next day went to Jonesboro in the Lawrences' team and remained about Jonesboro and Machias till Saturday, April 12, when he went with the Lawrences to Lubec, their home and where they carried on a large business in packing fish, &c.   While there he entered into an arrangement with them to become the manager of their lumber business in Jonesboro, with the right to acquire an interest in the business on given terms.   In pursuance of this arrangement he and the Lawrences on April 19, 1902, at Lubec, organized a corporation by the name of the Lawrence Lumber Company, to be located at Jonesboro, for the purpose, among others, of taking over and operating the property in question.   There is no evidence that anything more was done in the matter until May 10 or 12th, several days after the plaintiff's option had expired by limitation, when the Lawrences conveyed to the corporation the property in question at a valuation of $50,000 and stock therefor was issued to them, and they transferred one-half of the stock to Mr. Grimes.

It may be that the conduct of Mr. Grimes and the Lawrences justifies a suspicion that the Lawrences did actively interfere to prevent a sale by the plaintiff.   It does not amount to proof however.   There is no intimation, so far, that the Lawrences offered the property to Grimes or any one else for $34,000 during the life of the plaintiff's option.   It does not appear either, that the Lawrences took the initiative, which is the essential thing for the plaintiff to prove.   That can

only be surmised.   For all that appears, Grimes was the active persuader and the Lawrences the passively persuaded.   Their conduct as above detailed is logically consistent with the testimony of Grimes and the Lawrences that the arrangement between them was not made, nor suggested, nor thought of even, until after the prospective purchasers had declined to purchase and had so notified the plaintiff; and with their further testimony that no offer or suggestion of sale at less than $49,000 was made at any time before the plaintiff's option expired; and also with their testimony that neither Grimes nor either of the Lawrences in any way discouraged the prospective purchasers from completing the purchase at any time during the plaintiff's option. It is also logically consistent with the theory that Grimes, himself, while looking over the property and the chances of business connected with it, conceived in his own mind the idea, without any suggestion from the Lawrences, that he could do better for himself by withdrawing from all connection with the plaintiff and effecting some arrangement with the Lawrences, and acted accordingly without any inducement from the defendants.   This might have been the case, although perhaps not probable, notwithstanding all the suspicious circumstances shown, and if so, they gave the plaintiff no cause of action against the Lawrences.

No arrangement or understanding between Grimes and the Lawrences was carried into effect until May 10 or 12, several days after the plaintiff allowed his option to lapse.   The Lawrences in no way put it out of their power to convey the property to the plaintiff or his assigns in full compliance with the terms of the option.   They were able to convey at any time during the option, and there is no evidence they or either of them ever declared they would not convey for the agreed price.   So far as appears, they would have conveyed to the plaintiff or his assigns at that price, notwithstanding their negotiations with Grimes, had the plaintiff during his option found them a customer willing and prepared to purchase.   All their negotiations, plans and preparations might reasonably have been contingent, not to be carried into effect unless and until the plaintiff let his option lapse.   It does not appear that any person who might have been induced to become a customer had any knowledge of the dealings between Grimes and the Lawrences, nor that the plaintiff could, even probably, have found a customer but for those dealings.

But the plaintiff called a witness who testified that on April 16, nearly a week after the Wing syndicate failed to purchase and the plaintiff ceased his efforts to sell, Edward M. Lawrence told him, that they, the Lawrences, had made a sale of the property in question, that the purchaser had taken possession that morning, and that the purchaser was Mr. Grimes. It is not claimed, however, that the Lawrences had in fact conveyed the property at that time, or had in any way effectually barred themselves from conveying a good title to the plaintiff or his assigns. The undisputed fact was they had not. In view of this fact the most this evidence shows, is that on April 16, the Lawrences and Mr. Grimes had concluded a bargain or arrangement for a sale to Mr. Grimes to be carried into effect afterward. It does not show the fact essential for the plaintiff to show, viz:—that the Lawrences had barred themselves from conveying to him, or had induced Grimes to abandon the plaintiff and deal with them on his own account. It still falls short of showing, or tending to show, that the Lawrences took the initiative.

The plaintiff also called a witness who testified that during the time the property was being examined by the Wing syndicate early in April, Mr. Grimes said the Lawrences had offered the property to him for $34,000, half down. This, however, is not evidence against the Lawrences, the defendants.

No other material evidence is called to our attention as tending to show that the Lawrences interfered with the plaintiff's rights under and during his option, either by offering the property at less than $49,000, the price fixed by the plaintiff, or by inducing Mr. Grimes to withdraw from his connection with the plaintiff. In our own research we have found no other evidence of that tendency.

Granting all the competent testimony adduced by the plaintiff to be true, and drawing all permissible inferences in his favor, yet the evidence gives ground for surmise only. It falls short of proving that the Lawrences actively brought about the failure of the plaintiff, during his option, to find a customer willing and prepared to buy the property on his terms.

*Motion sustained.   Verdict set aside.*