PAULINE JUDKINS

*vs.*

EDITH BUCKLAND

Penobscot.    Opinion, July 8, 1953.

*B. M. Siciliano,* for plaintiff.

*Harry Stern,* for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, JJ. MURRAY, A. R. J., did not sit.

FELLOWS, J.   This was an action of slander brought by Pauline Judkins of Corinna, Maine against Edith Buckland of the same town, and comes from the Superior Court for Penobscot County. At the close of the testimony a motion for a directed verdict was made by the defendant. The motion was granted, and the case now comes to the Law Court on the plaintiff's exceptions. The exceptions are overruled.

Minnie Loud, who was the only witness who was called to testify to the alleged slander, testified in part as follows:

> "Q.   Do you claim to remember the exact words that took place there?
>
> A.   Very near.
>
> Q.   Will you repeat to the jury, please, right from the beginning?

A. Mrs. Buckland (defendant) and I were talking and I asked Mrs. Buckland who she thought cashed the check. Mrs. Buckland said: 'Don't you know who cashed the check?' And I said: 'No. Mrs. Staples told me it was a weaver in this mill, that she saw her when she did it.' Mrs. Buckland said: 'Mrs. Staples knows better than that. There isn't a weaver in this mill that would do that.' Then Mrs. Buckland said: 'Everyone knows who cashed the check,' she says, 'they know out in the office who cashed the check and they are watching all the stores thinking she will do something else and they will catch her.' Then Mrs. Buckland said it was a drawing-in girl that did it, that was getting very little work, that she cashed the check and paid twenty dollars on the bill. She said that Mrs. Holbrook was crying night and day over it. And I asked her what Mrs. Holbrook cared, and she said that Mrs. Holbrook didn't care about the girl but she was in the family and she didn't want the disgrace brought on the family; and she said when this girl got caught she would lose what reputation she had but she never had but little. Mrs. Buckland said in the conversation, when the girl got caught she would lose her job and get plenty. That was all."

The first count in the plaintiff's declaration declares in substance that the plaintiff had always been reputed of good character; that on July 8, 1951 the employer of the plaintiff issued to its employees checks for "vacation wages;" that one check was payable to Julia Nason and was "stolen from the premises" of the employer, by a person unknown; that the theft was well known to the employees; that the plaintiff was a spare drawing-in girl; that defendant was a weaver in the employer's mill; that the defendant delivered the check to an employee of P. E. Ward Co. who cashed it; that the defendant falsely and maliciously spoke the words (testified to by Minnie Loud) to the injury and

damage of the plaintiff. The second count, similar to the first count, alleged that the endorsement of the check was a forgery by a person unknown, and the alleged slanderous words accused the plaintiff of forgery. The third count declared that the alleged slanderous words accused the plaintiff of "uttering and publishing" a forged instrument with intent to defraud.

The plaintiff showed that the Eastland Woolen Mill, Inc., of Corinna issued vacation pay checks sometime in July 1951 to distribute among its employees in the same manner as the weekly pay checks. The plaintiff Pauline Judkins was one of the spare drawing-in girls, Eva Bell was a spare drawing-in girl, the defendant Edith Buckland was a weaver, and Julia Nason was a weaver, and all were employed by the corporation. The testimony indicates that Julia Nason went on vacation the day before the vacation pay checks were distributed. The evidence of the plaintiff's witnesses also indicates that a collector for P. E. Ward Co. received the check from the hand of the defendant and cashed the vacation check, payable to Julia Nason and endorsed by some person. Later the check was destroyed by the collector when he was obliged to make good the amount to his employer.

Minnie Loud was the only witness called by Pauline Judkins, the plaintiff, who testified to the alleged conversation with the defendant Mrs. Buckland. The plaintiff offered other witnesses to explain the existing facts and circumstances. There was evidence offered by the plaintiff to show that there were four "drawing-in" girls at the Eastland Woolen Mills, Inc. In answer to a question by the court, Minnie Loud testified that there were always four, "three steady ones and a spare one." At this time there were at least two spare girls. There is also uncontradicted testimony in the case that there were two women called "Mrs. Holbrook" in the town.

The words declared on by the plaintiff, and testified to by Minnie Loud, are claimed by the plaintiff to be slanderous because she says in her declaration, in her exceptions, and in her brief, that the check payable to Julia Nason could not have been cashed by any person, unless that person had the check in his possession illegally or without authorization, and had forged Julia Nason's name in endorsing it, and that it follows "as a matter of course" that the cashing of the check, falsely endorsed, would constitute a crime of stealing, forging, or uttering a forged instrument. The plaintiff further claims that the words were spoken of and concerning the plaintiff.

The plaintiff further contends in her bill of exceptions, (which contention does not appear in the argument, and may have been waived) that the presiding justice, having denied a motion for a nonsuit at the close of the plaintiff's testimony, could not properly grant the motion for a directed verdict because the justice had thus determined that there was a prima facie case.

"A declaration for slander ordinarily contains, as here, (1) the inducement, or statement of the alleged matter out of which the charge arose (2) the colloquium, or averment that the words were used concerning the plaintiff (3) and the innuendo, or meaning placed by the plaintiff upon the language of the defendant. 2 Greenleaf Ev. (4th Ed.) 'Libel and Slander,' 405; Starkie on Slander 'Averments,' 262; 37 C.J. 'Libel and Slander,' 22, Par. 328; Patterson v. Wilkinson, 55 Me. 42; Bradburg v. Segal, 121 Me. 146; Brown v. Rouillard, 117 Me. 55. The pleadings, under our practice, may in all cases be the general issue with a brief statement of special matter of defense. 'The plaintiff must join a general issue.' R. S., 1944, Chap. 100, Sec. 36.

A general denial is called the general issue because 'the issue that it tenders involves the whole declaration.' Stephen on Pleading (5th Ed.), 155; 2 Bouvier Law Dic-

tionary (3d Revision), 1347. 'The general issue is the plea which challenges the merits of the plaintiff's declaration.' Craven v. Turner, 82 Me. 383, 388." *McMullen* v. *Corkum and Trustees,* 142 Me. 393, 399.

The plea of the general issue in slander, as in this case, requires the plaintiff to prove (1) the special character and the essential extrinsic facts; (2) the speaking of the words; (3) the truth of the colloquium, or the application of the words to himself or herself, and (4) damages to the plaintiff. If the words are themselves actionable *per se,* the malice is presumed and no evidence of malice is necessary, although express malice may be shown in proof of damages. Words are to be construed in the sense which hearers of common and reasonable understanding would ascribe to them. See 2 Greenleaf on Evidence (16th Edition), Secs. 410-420; *McMullen* v. *Corkum,* 143 Me. 47; *McMullen* v. *Corkum and Trustees,* 142 Me. 393, 399. If the language is plain it is solely a question for the court whether it is actionable. The published article in libel, and the words in slander, must be construed, stripped of innuendo, insinuation, colloquium, and explanatory circumstances. Words must be taken in their ordinary and usual meaning because words may convey one idea to one person and another idea to another. "It is not the intent of the speaker or author, or even of the understanding of the plaintiff, but of the understanding of those to whom the words are addressed and of the natural and probable effect of the words upon them." *Chapman* v. *Gannett,* 132 Me. 389, 391; *Bradburg* v. *Segal,* 121 Me. 146; *Nichols* v. *Sonia,* 114 Me. 545.

It is true that it often may be a jury question whether defamatory matter applied to the plaintiff, but there must be evidence from which the jury can make that finding. *Sinclair* v. *Gannett,* 148 Me. 229. A jury is entitled to draw reasonable inferences from proved facts, but conjecture is not proof. *Glazier* v. *Tetrault,* 148 Me. 127 citing among other cases, *Ross* v. *Russell,* 142 Me. 101; *Elwell* v. *Hacker,*

86 Me. 416. See also *Stodder* v. *Coca-Cola, Inc.*, 142 Me. 139, 143.

In testing the propriety of a directed verdict for defendant, the evidence must be viewed favorably to the plaintiff. *Bolduc* v. *Therrien*, 147 Me. 39. A verdict should be directed when any other verdict would not be sustained. *Hultzen* v. *Witham*, 146 Me. 118; *Shackford* v. *N. E. Tel. & Tel. Co.*, 112 Me. 204.

Under the foregoing long established rules we are of the opinion that the alleged words spoken to Minnie Loud by Mrs. Buckland, the defendant, did not have the meaning claimed in the plaintiff's declaration. They were not slanderous even if they were spoken. To cash a check is not a crime. In this case, and under the circumstances testified to, the plaintiff was not accused of a crime. The record shows that the attorney for the plaintiff said "I haven't charged anybody with anything." To cash a check, however obtained, does not necessarily show fraud, forgery, or other offense.

If, by any stretch of imagination, the alleged words were slanderous, there is no evidence that the words were spoken of, or concerning, the plaintiff. There was another person that the evidence could apply to, and possibly several others. It would be mere conjecture or a guess. The plaintiff argues that relationship to Mrs. Holbrook identifies, but there is uncontradicted evidence that there were two by the name of Mrs. Holbrook. There is no allegation in the declaration that Mrs. Holbrook was in fact a relative of the plaintiff, nor which of the Mrs. Holbrooks is referred to. The fact that the plaintiff brought an action does not permit guesswork in her favor.

A jury is not warranted in selecting which of two conjectures to adopt on which to base a verdict. Reasonable inferences from true facts are proper. The exercise of judg-

ment is necessary. A verdict must not be an arbitrary decision. The choice of two possibilities is guesswork, unless there is evidence that will lead the reasoning mind to one conclusion rather than to the other. A proposition is proved when the evidence pertaining to the proposition is inconsistent with the negative. *Smith* v. *Lawrence,* 98 Me. 92; *McTaggart* v. *Railroad Co.,* 100 Me. 223. An inference of fact may be drawn by a jury only from other facts proved, and is a deduction or conclusion from facts known to be true. For an instance, where no evidence that a letter referred to a certain check, see *Seavey* v. *Laughlin,* 98 Me. 517.

The statement in the bill of exceptions to the effect that where the presiding justice failed to grant a nonsuit, it showed that he had decided that there was a prima facie case. This conclusion does not follow. The justice for various reasons may desire to hear all the evidence. The granting of a nonsuit is discretionary. The plaintiff has the right of exceptions if a nonsuit is ordered, but the refusal to direct a nonsuit is not subject to the defendant's exceptions. There is no right of exceptions to the refusal to grant a nonsuit. *Bragdon* v. *Appleton Insurance Co.,* 42 Me. 259; *Cooper* v. *Waldron,* 50 Me. 80; *White* v. *Bradley,* 66 Me. 254; *Washburn* v. *Allen,* 77 Me. 344; *Hunter* v. *Mountfort,* 117 Me. 568. A voluntary nonsuit before opening his case is a matter of plaintiff's right. After the case is opened, and before verdict, a voluntary nonsuit is discretionary. See *Washburn* v. *Allen,* 77 Me. 344, giving the history of the rule under common law and in Maine.

At the close of a case, if the party having the burden of proof introduces insufficient evidence to authorize a favorable finding, a verdict should be directed against him. He has right of exception. *Heath* v. *Jaquith,* 68 Me. 433; *Berry* v. *Atlantic Railway,* 109 Me. 330; *Johnson* v. *Railroad Co.,* 111 Me. 263; *Cate* v. *Merrill,* 109 Me. 424, 427; *Hultzen* v. *Witham,* 146 Me. 118.

In this case the direction of a verdict was proper. There is too much for conjecture. No other verdict, than that ordered, would have been sustained.

*Exceptions overruled.*