ARDEN T. BUBAR *vs.* ANTONETTA BERNARDO.

Washington.    Opinion, July 21, 1942.

*Myer W. Epstein,*

*Abraham Stern,* for the plaintiff.

*Eaton & Peabody,*

*Thomas L. Marcaccio* of Providence, R. I. for the defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORS-TER, MURCHIE, JJ.

MURCHIE, J. The plaintiff brings this case to the Court on an exception to the ruling of the justice presiding in the Trial Court in ordering a nonsuit.

On the record it would have been necessary, had the issue been submitted to a jury, for findings to have been made that the plaintiff, as an employee of defendant, on September 8, 1938, while operating a jack hammer in defendant's quarry, where six or more persons were regularly employed, suffered an eye injury from a chip of steel or iron which flew either from a hand hammer which he was wielding to remove a bit from the rod of the jack hammer or from the bit itself, or that the question as to whether it came from the one or the other was uncertain. The extent of the damage is not presently material, but as a result of the injury, the plaintiff lost the sight of his left eye where the chip struck. Necessary findings also, bearing in mind that there was no denial of any of the statements made in the plaintiff's testimony, would have been that the hammer was a home-made one; that it was defective; that the plaintiff had called the attention of defendant's foreman and general manager (described in the testimony as "the big boss") to the defect; and that undertaking had been made by an agent of the defendant, possessing authority, to fix it up or furnish another one.

Point is made by the defendant in argument that plaintiff's

action was not commenced until almost three years after the accident. The record discloses that the plaintiff quit work immediately following the injury; that he reported the injury promptly to the defendant's foreman and to her general manager; that he left the quarry shortly thereafter to secure medical attention and did not return to work for several days; and that until relieved by surgery more than a year and a half later, he was never able to stand the vibration which is a necessary incident to the operation of a jack hammer.

The declaration seeks to ground liability in negligence on the part of the defendant in furnishing an unsafe and defective hammer for the performance of a part of the plaintiff's necessary duties, when she knew or should have known of the defect. In separate counts the plaintiff alleges (1) his own due care, and (2) that defendant, in operating the quarry at the time of the injury, was subject to the provisions of the Workmen's Compensation Act, R. S. 1930, Chap. 55. In the first case brought before this Court after the enactment of that statute, where recovery was sought against an employer who was not an assenting one under its terms, on a declaration in common law form, this Court declared, although the issue was not there involved, that there was no inconsistency in joining such separate counts in one declaration. *Nadeau* v. *Caribou Water, Light & Power Co.,* 118 Me., 325, 108 A., 190. That principle we now affirm.

In any case where the propriety of an ordered nonsuit is brought up for review under an exception, the plaintiff is entitled to have this Court view the evidence presented in the cause most favorably to his claim. *Johnson et al.* v. *New York, New Haven & Hartford Railroad et al.,* 111 Me., 263, 88 A., 988; *Shackford* v. *New England Tel. & Tel. Co.,* 112 Me., 204, 91 A., 931. In *McTaggart* v. *Maine Central Railroad Co.,* 100 Me., 223, 60 A., 1027, where a case was submitted on report, it was stipulated that it was to be considered as if a verdict for the plaintiff was under review on a motion of the defendant for new trial, in which situation, as in the present one, all con-

clusions and inferences of fact which a jury would have been warranted in finding for the plaintiff must be considered by us in that beneficent light.

But for the applicability of the Workmen's Compensation Act, the issue under the count wherein the plaintiff alleges his own due care would be a very narrow one, to be controlled within the established rule that an employee assumes the risks which are incidental to his employment, *Golden* v. *Ellis et al.*, 104 Me., 177, 71 A., 649; *Cooney* v. *Portland Terminal Co.*, 112 Me., 329, 92 A., 178; as modified by the principle recognized in *Dempsey* v. *Sawyer*, 95 Me., 295, 49 A., 1035, that while he must be held to assume all normal risks, including that of defective machinery, such do not include particular defects previously reported to his employer, as to which assurance of remedy has been given. On this count, disregarding entirely the provisions of the Compensation Act, it seems apparent that the plaintiff's own testimony, if believed, might have been considered sufficient, by a proper trier of the fact, to bring his case within the exception to the rule of one hundred per cent risk assumption, and absolve him from any charge of contributory negligence. The issues as to the credibility of his testimony and the weight to which it was entitled were questions for a jury rather than for the Court under our system of jurisprudence, *Sweetser* v. *Lowell et al.*, 33 Me., 446; *Sawyer* v. *Nichols*, 40 Me., 212; *Parsons* v. *Huff*, 41 Me., 410; *Blackington* v. *Sumner et al.*, 69 Me., 136, unless decision should properly hinge on one of the controls which the defendant asserts are fundamental and which will be discussed hereafter.

The same thing is true with reference to the count which seeks to eliminate questions as to the assumption of risk and contributory negligence by allegation that the defendant is "subject to" the provisions of the Workmen's Compensation Act. There may be thought to be some confusion in the authorities, so far as this Court is concerned, as to whether or not the burden rests upon a plaintiff who seeks to recover on this basis to plead the status of his employer affirmatively. In the

*Nadeau* case, supra, Mr. Justice Deasy discussed this question in considering exceptions (1) to the refusal of the justice presiding in the Trial Court to instruct the jury that the plaintiff must show that the defendant had more than five workmen or operatives employed in the business in which plaintiff was employed at the time of his injury, and (2) to an instruction that it was not a defense in the case that the plaintiff was negligent. The majority of the Court declared that such burden did rest upon such a plaintiff, with the burden of allegation of the fact, but notwithstanding no such allegation was contained in the declaration, the exceptions were overruled because evidence on the point, offered by the plaintiff in the trial of the cause, had been excluded at the instance of the defendant. The opinion drew a distinction between large employers and small ones to which Mr. Justice Morrill was unwilling to subscribe and in a separate concurring opinion he construed the Act as operating to deprive a defendant employer of the common law defenses and as imposing the burden on him to allege and prove any facts on which he sought to rely which would establish his immunity from its terms.

Even under the rule declared by the majority in the *Nadeau* case, and it is unnecessary to affirm that rule upon the present facts, the plaintiff was entitled to have the issue of fact as to the defendant's negligence left for the determination of a jury, since one of the counts in his declaration did allege a status on the part of the defendant, proved by evidence that is not disputed as the record stands, that eliminated all other issues from the case unless, again, the issue was determined properly in the Trial Court on one of the more fundamental controls remaining to be considered.

In the argument addressed to this Court on behalf of the defendant there is no denial of these general principles but rather assertion is made that their operation is inapplicable to the state of facts presented because (1)the evidence adduced does not establish any negligence on the part of the defendant even under the applicable rule of consideration in the light most

favorable to the .plaintiff, and (2) that, tested by the same standard, such evidence furnishes nothing more than ground for conjecture that the injury was occasioned by a metal chip, and no basis for a finding that it came in fact from the hammer, as was alleged, rather than from the bit, which was not alleged to be defective.

Reliance is also placed on assertion that the evidence offered on behalf of the plaintiff would not justify reasonable men in finding facts which would support his contentions because he did not make the injury known to his fellow workmen (other, it is to be presumed, than the blacksmith, his foreman, and the defendant's general manager, to all of whom his evidence shows that he did report it) when it occurred; or support his testimony by calling any· of those fellow workmen to the stand as witnesses in his behalf, and because it would strain credulity to believe that one would suffer so grievous an injury as he alleges without seeking to remedy the condition before the lapse of so great a time, or having it definitely determined whether or not a steel chip was in his eye.

The first of these special controls is obviously untenable. The record contains evidence, uncontradicted in the present state of the case, on which a jury which believed it credible might properly have found negligence on the part of the defendant. The question as to its credibility, like that involving its weight, was, as already noted, for the jury and not for the Court. *Sweetser* v. *Lowell et al.*, supra; *Sawyer* v. *Nichols*, supra; *Parsons* v. *Huff*, supra; *Blackington* v. *Sumner et al.*, supra; *Martin* v. *Tuttle*, 80 Me., 310, 14 A., 207.

For the second of these special grounds of control the defendant relies upon the rule declared in *Smith* v. *Lawrence et al.*, 98 Me., 92, 56 A., 455, and *McTaggart* v. *Railroad*, supra, which, on widely divergent facts, stand for the rule that an allegation is not proved by evidence which furnishes ground for "surmise" or for "conjecture" only, and the admission of plaintiff in cross-examination that he did not see the chip fly from the hammer, or from the bit. Emphasis is laid upon the

statement of Mr. Justice Whitehouse in *Golden* v. *Ellis,* supra, that:

"Even if a hammer is made of suitable material and properly tempered, it is a matter of common knowledge that when it is used with great force upon other steel implements, small chips or scales of steel are liable to break off and fly from one implement or the other."

The particular case turned on the recognized rule that the plaintiff, regardless of whether the chip came from a defective striking hammer wielded by his fellow servant or from the bull-set which he was holding, had assumed the particular risk to which his injury was chargeable. The Court later expressly declared that in considering the nonsuit which was in issue, it was assumed that the injury was caused by a chip "splintered off from a defective hammer used in a proper manner by a fellow servant."

As the record now under consideration stands, the testimony of the plaintiff shows that he was experienced in the use of a jack hammer and had removed bits therefrom over a term of years in the very manner employed on the occasion which is in question; that he had never known a chip to fly from a bit; and that his experience with the particular hammer showed that chips had frequently flown from it. Whether or not this evidence could be contradicted by the defense, and whether or not, if so contradicted, a record would be established on the basis of which the justice presiding at the trial, or this Court, might properly say that a jury finding of fact that the particular injury was in fact caused by a chip which flew from the hammer rather than from the bit, is not material at the present time. The record does not disclose whether or not the defendant, her general manager at the time of the accident, or her then foreman, was present in Court to hear the plaintiff tell his story, but the rule invoked in *Union Bank* v. *Stone,* 50 Me., 595, 79 Am. Dec., 631; *York et al.* v. *Mathis et al.,* 103 Me., 67, 68 A., 746, and *Devine* v. *Tierney et al.,* 139 Me., 50, 27 A.,

(2d), 134, would seem to be applicable and to indicate that since the defendant failed to offer any testimony, inference might properly be drawn by the appropriate trier of the fact that she preferred the adverse inferences of the testimony introduced on behalf of the plaintiff to any definite testimony available on her behalf.

As to whether or not the plaintiff's story strains credulity, the issue is whether or not the strain is so great that, as matter of law, it may be said there is no evidence in the record which would have supported a verdict in his favor if the case had been submitted to a jury and such a verdict returned. It is urged in argument that the implications carried by the abnormality of plaintiff's conduct is emphasized by what the record shows, or may be held to imply, as to conduct of the defendant after the injury by contrast with what would have been her normal action if plaintiff's testimony that his injury was promptly reported is accepted as true. This raises the query as to whether it is sufficiently well known that any employer under the circumstances would immediately, for his own protection, make certain of proper first aid treatment and medical assistance for an injured workman. Query might also be as to whether she would not have carefully preserved the hammer which was alleged to be the cause of the injury and producd it in court to shatter the plaintiff's entire case by showing that it was not in fact defective. This illustrates the kind of two-edged sword which is represented by the urging of the defendant that the plaintiff has not offered any of his fellow workmen as witnesses. On the authority of the *Union Bank,* the *York* and the *Devine* cases, supra (and particularly on that of the *Union Bank* case, where exception to an instruction given the jury that the fact the defendant did not testify was a matter which the jurors might consider and give such weight as they might think it deserved was held not to be error), plaintiff's testimony that the hammer was defective, that he had notified the agent of the defendant thereof, and received assurance of remedy, might properly, in the absence

of denial, be considered by any trier of the fact as carrying implication of support for the plaintiff's testimony that it was the hammer rather than the bit from which the chip which did the damage flew.

On the record it seems apparent that the testimony offered by the plaintiff was sufficient to make out a prima facie case, and that it was prejudicial error for the justice presiding to order a nonsuit.

*Exception sustained.*