HYMAN GERSTIAN *vs.* JAMES E. TIBBETTS, JR.

Kennebec.    Opinion, October 15, 1946.

*William H. Niehoff,* for plaintiff.

*McLean, Southard & Hunt,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MURCHIE, TOMP-
KINS, FELLOWS, JJ.

FELLOWS, J.    In this action, tried before a jury, the plaintiff,
Hyman Gerstian, has alleged that "on or about the fifteenth

day of January, 1946, that he was individually carrying on the business of real estate broker and agent, that on or about said date the defendant employed the plaintiff to negotiate sale of land and buildings at No. 312 on Water Street so-called, in said Augusta; undertaking and agreeing to pay him as a commission, a sum agreed, to wit: Five per cent of the selling price of said land and buildings if he should obtain a purchaser for the same for the sum of $30,000; that he did procure a purchaser for the said land and buildings upon the terms mentioned and that the defendant owes the plaintiff the sum of Fifteen Hundred dollars."

At the conclusion of the evidence, offered by the plaintiff, the presiding justice ordered a nonsuit. The case is now before this Court on plaintiff's exceptions to this order. The question for decision is whether the evidence offered, viewed most favorably to plaintiff's claim, would warrant a recovery.

The plaintiff testified that his business was agent for the sale of real estate. That he was a licensed broker was admitted by counsel for defendant. In January 1946, he had in his hands, for sale, certain property, in Augusta, occupied by Joseph Kaplan and Julius Sussman and known as the Blouin Block, which he tried to sell to them, but was informed that they preferred the Tibbetts building next door, owned by the defendant James E. Tibbetts, Jr. As a result, Gerstian went to Tibbetts to learn if Tibbetts would sell, and learning that he would, he told Tibbetts that he "might put the deal through." Tibbetts told Gerstian to "bring him in." Sussman had seen the building but Kaplan had not, and the plaintiff took Kaplan in to see it. Kaplan and Sussman then made an offer of $27,500. Tibbett's price however was $30,000, with the condition of a lease back permitting Tibbetts to continue to occupy. for a short period at a "certain price." There was no testimony to the effect that Gerstian ever discussed with Kaplan or Sussman the question of defendant's demand for a lease, as part of the purchase.

After the offer and refusal of $27,500, the defendant Tibbetts told the plaintiff, Gerstian, that another real estate agent, one Newbert, had the contract to sell the building, and he wanted Gerstian to see Newbert. Gerstian refused to see Newbert and during January and February continued his endeavors to secure a sale from the defendant to Kaplan and Sussman, by calling on them frequently without success. All were "backing and filling" the plaintiff says. Finally on March 4, 1946, Tibbetts told Gerstian to report to Kaplan and Sussman that "unless they buy that building tomorrow or next day they are going to lose it," because the defendant had another customer. Gerstian's activities then ceased.

Julius G. Sussman testified for the plaintiff that he and his brother-in-law, Kaplan, occupied the block next door to the Tibbetts property and that they wanted to buy from Tibbetts, if the Tibbetts block met with their requirements as to floor space. Otherwise they were not interested. He had several conversations with Gerstian "dickering back and forth on price and conditions." "After Mr. Newbert came into the case" the measurements were made, and Kaplan and Sussman paid Newbert a deposit of $1,000. A deed was made through Newbert on March 23, 1946, with a lease back to Tibbetts for two years.

Joseph Kaplan, for the plaintiff, testified that he "dickered" with Gerstian "half a dozen times," but that the first part of March, Mr. Newbert came to see him "and showed me he had the contract with Mr. Tibbetts that he had the property for sale and I could not do business with anybody else." Kaplan did no business with anyone except Newbert after March 1, 1946. With Newbert, Kaplan went to look at the building and took measurements. The contract to purchase was made through Newbert on March 9, 1946. The sale of the property to *Mrs.* Kaplan and *Mrs.* Sussman, with the furnishings and an agreement to lease back for two years, was made on March 23, 1946. The lease back was a part of the agreement of purchase and sale.

An agent or broker, for the sale of real estate, is ordinarily entitled to compensation for his services, when he has performed the service according to special or implied agreement, by the usage of trade, or by the presumed intention of the parties. The broker must first prove there was a contract. If an express agreement, he must show its terms, and that the terms have been complied with. If an implied understanding, it is necessary to prove facts and circumstances, from which the inference may be drawn, of knowledge and assent to the acts of the broker on the part of the seller, and that the broker produced to the seller a ready, willing, and able buyer upon the authorized terms. *Garcelon* v. *Tibbetts,* 84 Me., 148, 24 A., 797; *Smith* v. *Lawrence,* 98 Me., 92, 56 A., 455; *Hartford* v. *McGillicuddy,* 103 Me., 224, 68 A., 860, 16 L. R. A. N. S., 431, 12 Ann. Cas., 1083; *Damers* v. *Fisheries Company,* 119 Me., 343, 111 A., 418; *Grant* v. *Dalton,* 120 Me., 350, 114 A., 304; *Jutras* v. *Boisvert,* 121 Me., 32, 115 A., 517; *Mears* v. *Biddle,* 122 Me., 392, 120 A., 181; *Hoskins* v. *Wolverton,* 123 Me., 33, 121 A., 170; *Jones* v. *Briggs,* 125 Me., 265, 132 A., 817; *Morrill* v. *Farr,* 130 Me., 384, 156 A., 383; *Jordan* v. *Hilbert,* 131 Me., 56, 158 A., 853.

In this case the defendant did not in words employ the plaintiff to sell for him his property. The plaintiff had the Blouin Block to sell. The prospective customers told him they were not interested in the Blouin property, but in the block next door belonging to the defendant. The plaintiff went to the defendant to ascertain if he would sell. There was evidence from which a jury might have inferred that prior to the first week in March, the plaintiff was engaged in an endeavor to effect a sale of defendant's property, with knowledge on the part of the defendant. There was no evidence, however, that the prospective customers were ready or willing to agree to the defendant's terms of $30,000 and a lease, until after the property was placed in the hands of Newbert and after the plaintiff had ceased to do any work in the matter. The customers were not interested in paying

more than their offer of $27,500, until satisfied that the building met with their required measurements, and these measurements were not taken until the building was in Newbert's hands, and the plaintiff had ceased his activities. The plaintiff ceased because he knew of the exclusive employment of Newbert. The customers, also, knowing of this employment, felt that they could no longer consult with the plaintiff, and no longer did so. If a jury could have found that there was originally a contract of employment, the right to negotiate for the sale of the property was clearly withdrawn from the plaintiff, on or before March 4, 1946, and before his customers were either ready or willing to purchase on defendant's terms. The sale resulted through other efforts, and with no intimation of bad faith on the part of the defendant. The plaintiff did not produce to the defendant the necessary, ready, willing, and able customer to permit him to recover a commission. On this ground, the order of nonsuit was proper.

There is another reason why the order of nonsuit in this case was a proper one, although the question does not appear to have been raised by counsel. The Legislature of Maine has defined in R. S. (1944), Chap. 75, Sec. 2, a real estate broker as one who sells, buys, or negotiates the purchase or sale of real estate, and has provided, in Section 7 of the same chapter, that no person engaged in that business "shall bring or maintain any action in the courts of this state for the collection of compensation for any services performed as a real estate broker or real estate salesman without alleging and proving that such person, partnership, or corporation was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose." Here, the record shows, there was no allegation that the plaintiff was a duly licensed real estate broker or salesman. The plaintiff did state without objection that he was a licensed broker for 1946; and it also appears, in answer to a question from the Court relative to the statutory license, that the attorney for the defendant said, "My brother

says it is so, and I have no doubt about it." If the fact that the plaintiff had a license is considered proved, it is not alleged. The very jurisdiction of the Court depends on *both* allegation and proof.

*Exceptions overruled.*