MAINE LAKES & COAST CORP.

*vs.*

JAMES C. JONES

Cumberland. Opinion, April 23, 1952.

*Jacobson & Jacobson,* for plaintiff.

*Agger & Goffin,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J. This case comes before this court on plaintiff's exceptions to the direction of a verdict for the defendant at the November 1951 Term of the Cumberland County Superior Court. The action is in contract for the recovery of a real estate broker's commission arising out of the sale of certain real estate located at 58 Everett Avenue, South Portland, Maine, owned by the defendant and co-listed with the plaintiff which was the holder of a real estate broker's license.

We said in *Johnson et al.* v. *New York, New Haven & Hartford Railroad, et al.,* 111 Me. 263, 265, 88 A. 988, 989, in speaking of the test of the propriety of the direction of a non-suit or a directed verdict:

> "Upon exceptions to an order of non-suit or of verdict for the defendant, the duty of the court is simply to determine whether, upon the evidence, under the rules of law, the jury could properly have found for the plaintiff. We are not called upon to express our own judgment of the probative force of the testimony. Whatever our own conclusions might have been, if there was evidence which the jury were warranted in believing, and upon the basis of which honest and fair minded men might reasonably have decided in favor of the plaintiffs, then the exceptions must be sustained."

We again said in *Shackford* v. *New England Telephone and Telegraph Company,* 112 Me. 204, 205, 91 A. 931, in speaking of exceptions directing a verdict for the defendant:

> "In considering exceptions of this kind, it is not the province of the court to weigh conflicting evidence and ascertain its comparative value, but only to determine whether the evidence, considered most favorably for the plaintiff, would have warranted a verdict in his favor. Johnson v. N.Y., N.H. & H. R.R., 111 Maine, 263."

Since the above decisions we have many times defined the principles of law relating to the propriety of granting a directed verdict for the defendant and these rules are clearly set forth in the case of *Barrett* v. *Greenall*, 139 Me. 75, 80, 27 A. (2nd) 599. The language used in that decision was also adopted in *Bolduc* v. *Therrien*, 147 Me. 39, 83 A. (2nd) 126, when the same question with respect to the propriety of granting a directed verdict was considered by our court. We said in *Bubar* v. *Bernardo*, 139 Me. 82, 85, 27 A. (2nd) 593:

> "The issues as to the credibility of his testimony and the weight to which it was entitled were questions for a jury rather than for the Court under our system of jurisprudence, *Sweetser,* v. *Lowell* et al, 33 Me. 446; *Sawyer* v. *Nichols* 40 Me., 212; *Parsons* v. *Huff,* 41 Me., 410; *Blackington* v. *Sumner et al,* 69 Me., 136, - - - -."

The evidence made a part of the bill of exceptions tends to prove that the defendant was the owner of the real estate in question and in the latter part of April, 1951, had certain conversations with one Hunt, who was a duly licensed real estate broker living on the same street and who had learned that the defendant was desirous of selling his real estate. Hunt asked the defendant to permit him to attempt to sell said real estate. There was other conversation with respect to the asking price and also concerning the usual 5% real estate broker's commission and Hunt requested permission of the defendant to co-list the real estate with the plaintiff which permission was granted. As a result of the conversations Hunt, on April 25, 1951, co-listed the property of the defendant with the plaintiff which advertised the property in the local papers on April 29th and 30th, 1951. Connected with plaintiff's office was a duly licensed broker by the name of Mrs. Anne Hewlett Mallinckrodt. Mrs. Mallinckrodt, in connection with her business, met one Adelbert R. Sargent, a lieutenant of the Maine State Police who

had been recently transferred to the Portland area and who was interested in either purchasing or renting a house for himself and family. After showing Sargent certain real estate in Portland, Maine, she showed him the real estate of the defendant and Sargent, who was accompanied by his wife, evidenced an interest in the real estate. It appears that again the same day, which Sargent says was May 2, 1951, Sargent asked Mrs. Mallinckrodt to take him and his wife again to the property, which she did. After the second visit Sargent, in the office of the plaintiff and in the presence of Mrs. Mallinckrodt, Mr. Wheelock, the manager of the office, and later, Mr. Abbott P. Smith, president of the plaintiff, discussed the real estate and the selling price and Sargent was encouraged by plaintiff and the others present to make his best offer for the real estate, which he did. This offer, including the identity and occupation of Sargent, was communicated to the defendant by telephone by Mr. Smith in the presence of Sargent, Mrs. Mallinckrodt and Wheelock but defendant refused the offer and Sargent, according to the testimony, would not raise his offer and left the office and afterwards left town and was not contacted by any of the interested parties, at least so far as the evidence discloses, until the following Monday, May 7, 1951, when, Mrs. Mallinckrodt testified, she had a telephone conversation with him and Sargent asked if the property had been sold. He was told that it had not been sold. The testimony further discloses that after May 7, 1951, on one occasion Mrs. Mallinckrodt called Sargent from plaintiff's office with respect to the real estate suggesting that he do something about it but that his reply was made up of excuses which indicated that some relative was going to buy real estate which he could rent. Mrs. Mallinckrodt testified that she distinctly remembered calling Sargent on May 18, 1951, concerning the real estate and that his answer to her query was that he thought he would be transferred back to Bangor, that he could not find any real estate here to buy

within his means and that he had asked for a transfer back to Bangor. It also appears from the evidence that when Sargent came to the Portland area and assumed his new position, connected with his organization and stationed at Scarboro was a civilian employee of the Maine State Police by the name of Einer Olesen who resided in South Portland, Maine, and who acted as a general repair man or mechanic for the Maine State Police at Scarboro Barracks. Olesen testified that he and others of the Maine State Police were informed by Sargent that he was looking for a home to buy or rent. He further stated that he had accompanied Sargent on various inspection trips looking for a home and that he had made a number of trips around the area on his own account because he knew the kind of a home that Sargent desired. He went on to state that he received information that the real estate of the defendant was for sale and that he inspected the outside of the premises and, thinking that it was the type of real estate in which Sargent would be interested, he attempted on May 2, 1951, to get in touch with Sargent by telephone. Being unable to contact Sargent, he on that same evening contacted the defendant by telephone and had a conversation with him with respect to the real estate. He stated that he ascertained the price, which was $10,500, and that there was no real estate broker involved. Arrangements were made by the defendant for Olesen to examine the real estate on the next day, which was Thursday, May 3, 1951. The testimony indicated that Olesen was much interested in the real estate and that he wanted to get information for Sargent, but knowing Sargent was out of town he then informed defendant that he would like to bring a Mrs. Cook around to see the house. It should be noted that Mrs. Cook was Mrs. Arnold Cook, Sargent's sister, who owned a home in which she lived in Scarboro, Maine. However, before he had made arrangements to do that and before he left the defendant he asked the defendant if he would sign papers to let him have

the house. The defendant declined to do that and informed Olesen that he would find out what the necessary procedure was as there was a mortgage on the property. Olesen further testified that he made arrangements for Mrs. Cook to see the house on Thursday evening and the testimony discloses that Olesen and Mrs. Cook examined the real estate on Thursday evening and arrangements were made to meet the defendant the next day, which was May 4, 1951, at which time further arrangements were made for an appointment with the defendant and the testimony discloses that the agreement of sale was signed Friday evening and a deposit of $500 was made. At the time the deposit was made and the agreement signed Mrs. Barbara Cook was unable to be present but the testimony discloses that she instructed her husband to sign the agreement and make the deposit and the agreement is signed by Arnold Cook, husband of Mrs. Barbara Cook, and the defendant and witnessed by Olesen.

It is to be noted that the evidence discloses that the negotiations of the defendant and Olesen, according to the defendant, were for the benefit of Mrs. Cook and they were concluded on Friday evening, May 4, 1951. The evidence further discloses that on May 15, 1951, the defendant conveyed the real estate to Barbara Cook, Sargent's sister, who testified that not only the down payment but the balance of the purchase price was borrowed from Sargent and she also testified that she informed the defendant that she was selling the property to her brother, Sargent. Within an hour after the defendant had conveyed the real estate on May 15, 1951, to Mrs. Cook, Mrs. Cook conveyed it to Sargent and his wife in joint tenancy and it should be noted that the conveyance took place at the office of the same bank and that the defendant was not present.

Under the applicable rules of law referred to herein the duty of our court is to determine whether or not the jury

could have properly found for the plaintiff and in discharging that duty the evidence is to be viewed in a light most favorable to the plaintiff. In other words, would the facts justify a verdict for the plaintiff. In the instant case there are many questions of fact involved and the jury heard the testimony and saw the witnesses and the credibility and the weight of the testimony is solely a matter for the jury under our procedure. One of the important questions of fact is whether or not the plaintiff broker in this case was in fact the procuring cause of the purchase of his principal's property. That is a question of fact and not of law. In short, it is the opinion of this court that there was sufficient evidence in this case, if the issues of fact be resolved in favor of the plaintiff and his witnesses, to justify a verdict in his favor. Under such circumstances it was reversible error to direct a verdict for the defendant. The exceptions to the direction of a verdict must be sustained. The mandate will be

*Exceptions sustained.*