WILMER L. LYLE
*vs.*
BANGOR & AROOSTOOK RAILROAD CO.

Penobscot.   Opinion, December 6, 1954.

*Harry Stern,* for plaintiff.

*Rudman & Rudman,*
*Scott Brown,* for defendant.

SITTING: WILLIAMSON, TIRRELL, WEBBER, BELIVEAU, TAP-
LEY, JJ., THAXTER, A.R.J.  FELLOWS, C. J., did not sit.

WEBBER, J. This matter comes before the Law Court on plaintiff's exception to an order of non-suit. Plaintiff was employed as a section hand and track man on defendant's railroad. It is properly alleged and not in dispute that defendant is a non-assenting employer of more than five workmen and that by the terms of the Workmen's Compensation Act, R. S., 1944, Chap. 26, Sec. 3, the common law defenses,

"I.     That the employee was negligent;

II.     That the injury was caused by the negligence of a fellow employee;

III.    That the employee has assumed the risk of the injury,"

are not available to this defendant. The sole issue for determination is whether or not any negligence of the defendant was a proximate cause of injury to plaintiff. We need not consider plaintiff's reference to the possible applicability of the Federal Employers' Liability Act as the issue as to defendant's negligence would remain unchanged.

The evidence, viewed in the light most favorable to the plaintiff, discloses that plaintiff's duties embraced "all track work and keeping the car house clean, lighting fires and other things that was done in that line." The defendant maintained a small "car house" in which was stored a gasoline powered car used to transport crews over defendant's tracks, tools, kerosene, gasoline for the car and "stuff like that." Defendant maintained an "oil house" some distance from the car house where supplies of gasoline and kerosene were stored. The kerosene was used for lanterns and flares and for lighting fires. On the day in question there were two one-gallon cans of kerosene and a larger can of gasoline on the floor of the car house about six feet from the stove. Plaintiff often filled these cans and knew the contents of each.

On the day of the accident plaintiff reported for work at the car house at 6 A.M. He found a hot wood fire already

burning in the car house stove. It was a cold, rainy day. The crew waited in the car house about forty-five minutes and then left with the car for the location of work. When they left, a "very hot fire" was still burning in the stove. About 12:30 P.M. they returned to the car house. "Some of the boys" put more wood in the stove and the plaintiff "right out of a clear sky" picked up one of the cans of kerosene and doused the fire generously with it. At this moment there occurred an explosion, and flame emerged from both the bottom and the top of the stove, burning the plaintiff. No one asked or instructed him to pour the kerosene on the fire and it is obvious that the entire action transpired very quickly. The foreman was at his desk and there is no suggestion that he was observing the plaintiff or had any intimation of the way in which the plaintiff intended to use the kerosene in time to give warning, even if one was required. Plaintiff had had experience over fifteen or twenty years in using kerosene to prepare a fire in a stove, although his custom apparently had been to "put the wood on and throw kerosene on, and then light." There is no indication of any previous incident, habit or experience of pouring liberal quantities of kerosene into a stove which had very recently contained a "red hot fire."

The only allegation of negligence in plaintiff's writ is that defendant caused an explosion "by negligently, carelessly, and recklessly furnishing highly dangerous and explosive fuel for the fire in the stove." The fuel was kerosene. Kerosene is a household commodity. It may be purchased without restriction in many a grocery store, hardware shop, or filling station. The housewife burns it in the kitchen range; the sportsman uses it to light his camp fire; the "Cape Cod lighter" which stands beside many a New England fireplace depends upon it. It is less volatile than gasoline, of which we said in *Loring* v. *Railroad Co.*, 129 Me. 369 at 373: "It is used by persons of all ages and of varying intelligence and experience, and handled properly does not readily ex-

plode. This is common knowledge." No negligence of the defendant can be predicated on its furnishing kerosene for the purpose of filling lanterns and flares and for lighting fires. Improper and careless use and handling of an otherwise safe commodity may sometimes create an unnecessary hazard. "It is common knowledge that an explosion often results from pouring kerosene directly from a can upon a fire or live coals in the stove. Recognizing this fact, courts have declared such an act negligence *per se." Loring* v. *Railroad Co., supra,* at page 374. Upon this evidence the inference is compelling that this is exactly what happened here, and the inevitable explosion occurred. The plaintiff's negligence, which would be immaterial here if only contributory, is conclusive against his recovery where it is the sole proximate cause of his unfortunate injury. The defendant had no duty to anticipate his negligence. It even had no duty to mark or identify the can as containing kerosene, although in any event plaintiff was not confused or deceived by an absence of marking and knew that the can contained kerosene. *Loring* v. *Railroad Co., supra.*

The plaintiff relies upon *Bubar* v. *Bernardo,* 139 Me. 82, but that case is readily distinguishable. There the employer furnished the employee with a defective hammer. We are not here dealing with any defective substance or equipment. Rather do these facts more closely resemble those in *Vining, pro ami* v. *Bridges Sons Co.,* 127 Me. 544, in which the defendant was held not liable for leaving a box containing blasting caps in plaintiff's yard where the plaintiff held the cap in his hand and applied a lighted match to it. There also plaintiff's negligence was held to be the sole proximate cause of his injury.

The evidence disclosed some conjecture and surmise that the can might have contained a mixture of gasoline and kerosene, although the only direct and positive evidence from plaintiff and his witnesses was that the can contained

straight kerosene. This suspicion in the minds of witnesses appears to have been based upon the erroneous assumption that unmixed kerosene applied liberally upon a live fire would not explode. Conjecture and surmise will not substitute for evidence and inferences may not be drawn which contravene well known physical laws. *Jordan* v. *Portland Coach Co.*, 150 Me. 149.

Plaintiff further contends that defendant has admitted liability because it is not disputed (1) that an investigator employed by defendant discussed the case with the plaintiff's attorney and did not specifically deny liability, (2) that in certain correspondence between attorneys for plaintiff and defendant liability was not specifically denied, and (3) that defendant voluntarily and without solicitation paid the hospital and medical expenses incurred by plaintiff. These contentions are obviously without merit. Mere investigatory or settlement talk is not equivalent to an admission of liability. With particular reference to the third contention, it is a beneficent and desirable rule of law which permits an employer to pay the expenses of his employee or assist the family during the employee's incapacity without thereby admitting liability or fault. The intention may well be, and often is, either to promote good employment relations, or to be charitable, or to avert undesired litigation. It was for the court to determine the preliminary question as to whether the payment or compromise tendered was intended by the defendant to be an admission of liability. This question the presiding justice resolved in favor of the defendant by ordering non-suit. To this sound exercise of his discretion, no exceptions lie. *Finn* v. *Tel. Co.*, 101 Me. 279; *Hunter* v *Totman*, 146 Me. 259.

The entry will be,

*Exceptions overruled.*