WILLARD NISBET
*vs.*
ROBERT A. LINBERG

Cumberland.    Opinion, February 7, 1961.

*Richard Chapman,* for plaintiff.

*Ralph I. Lancaster,*
*Horace Hildreth, Jr.,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ. SIDDALL, J., did not sit.

WEBBER, J. This was an action seeking recovery of commissions claimed by plaintiff broker to have been earned as a result of the sale of real estate by defendant owner. At the close of the evidence the defendant moved for a directed verdict. Upon denial of this motion and after a verdict for the plaintiff, the defendant seasonably filed his motion for judgment notwithstanding the verdict (or alternatively for a new trial), as provided in M. R. C. P. Rule 50 (b). Appeal from a decision adverse to the defendant raises the decisive issue here.

On October 25, 1958 the owner gave to the broker an agreement in writing by the terms of which the latter was to have the exclusive opportunity for a period of 90 days to sell the defendant's home at a price of $75,000. In addition the broker would have his commission upon any sale made during an additional 90 day period to a prospect who had been solicited by the broker. Other terms of this "exclusive" listing are not material here since no "sale" occurred during this 180 day period; nor did the broker present any customer during this period. *Labbe* v. *Cyr*, 150 Me. 342, 347.

On December 12, 1958 the plaintiff called upon one Porteous, a neighbor of the owner, and attempted to interest him in the purchase of defendant's home. Mr. Porteous explained that he was engaged in carrying out plans to "revamp" his own home and had no interest in any purchase. The broker reported this conversation to the owner and never thereafter made any contact with Mr. Porteous.

In January, 1959, when only a few days of the original "exclusive" listing remained, the broker attempted to obtain an extension of his contract. The owner, however, would agree, and this orally, only to an "open" listing which both seem to have understood would permit the owner to

sell the property either by his own efforts or through another broker competing with the plaintiff. The latter was successful also in obtaining from defendant a variation in his proffered terms of sale and the price was then reduced to $70,000 upon an added condition that the owner would retain some land on which to build a new home. It is not contended that after January 23, 1959 the plaintiff had any more than his "open" listing upon the revised offer of terms. In any event, nothing of consequence occurred during the period of 180 days which expired in April, 1959.

Some time in May, 1959 the defendant called upon Mr. Porteous, told him his house was for sale and asked if he would be interested in buying. Mr. Porteous informed him he was awaiting plans from his architect for an addition to his own home and that he would wish to see these plans and estimates of building costs before he could determine whether or not he would be interested. When he subsequently received these plans and the estimates as to probable cost, he abandoned any idea of remodeling his own home. Shortly thereafter, Mr. Porteous and his wife inspected the defendant's home, received an offer of sale for $60,000 conditioned upon the exclusion of about an acre of land, and determined to accept it. Their willingness to purchase was further dependent upon their ability to find a customer for their own home, but in this they were immediately successful. A survey of the excluded lot was promptly completed and on May 28, 1959 a written agreement of purchase and sale was executed. This agreement reflects a meeting of minds of purchaser and seller not only as to the real estate and its price, but also as to such related matters as items of personal property included in the sale, the seller's occupancy for a period of three months, the prorating of taxes and the allocation of cost and coverage of insurance.

On this posture of the evidence the plaintiff contends that he produced Mr. Porteous as a customer ready, willing and

able to purchase the defendant's property on terms satisfactory to the latter so as to entitle him to a commission on the completed sale. These facts present the interesting question whether or not a broker with an "open" listing who has informed a prospect that a property is for sale and has furnished his seller with the name of the prospect is entitled to a commission on a later sale produced entirely by the efforts of the owner. We think not. More can reasonably be required of one who would claim compensation for services performed. In *MacNeill* v. *Madore*, 153 Me. 46, 47, we said:

> "A commission on a sale is earned only where the broker is the *effective and producing cause* of the sale, unless the broker is otherwise protected by the specific terms of his contract with the seller." (Emphasis supplied.)

In *Gerstian* v. *Tibbetts*, 142 Me. 215, 218, the phrase employed was

> "and that the broker *produced* to the seller a ready, willing and able buyer upon the authorized terms." (Emphasis supplied.)

The word "produce" or its equivalent is one commonly employed by courts in expressing what is expected of a broker who claims a commission. In the ordinary situation the broker finds the prospect and awakens his interest in the client's property. If he finds such an interest already existing, he attempts to increase it. His efforts bring about a meeting of owner and prospect and an inspection of the premises to be sold. He stimulates negotiation as to price and terms and often accepts for his client a payment to bind the bargain and a memorandum evidencing the customer's commitment to the sale. We do not suggest that all such efforts and accomplishments must be shown in order that a broker might prove himself entitled to compensation. We are satisfied, however, that it would be most unusual for a broker to be able to demonstrate himself to be the "effective and producing cause" of a sale when it appeared

that he had never done any of these things or anything reasonably equivalent thereto. In the instant case the plaintiff saw the prospect but once and on that occasion failed to awaken in him any interest whatever. Mr. Porteous first developed an interest in the property many months later and then only as a result of overtures made to him by the owner at a time when his own circumstances had suddenly and completely changed. The defendant sold his property to Mr. Porteous entirely unaided by the plaintiff. When the plaintiff called upon Mr. Porteous and thereafter mentioned his name to the defendant as a person completely disinterested in purchasing property, he was not "producing" a customer ready and willing to purchase. When Mr. Porteous later became ready and willing to purchase, that transition had occurred entirely as a result of the defendant's efforts and he alone must be deemed the "effective and producing cause of the sale." In short, to paraphrase the language of *Gerstian* v. *Tibbetts, supra,* at page 219, the sale resulted entirely through efforts of the owner, and with no intimation of bad faith on his part.

The plaintiff relies almost exclusively on *Swan Co., Inc.* v. *Cook,* 143 Me. 109. The case is readily distinguishable. In that case the broker found the prospect, awakened the latter's interest in the property and brought his client and the prospective customer into contact and negotiation. These negotiations failed to culminate in an immediate sale only because the seller refused to vary his terms to meet the price the customer was then ready, willing and able to pay and which ultimately he did pay. When later the owner dropped his price to the level satisfactory to the customer, the broker was entitled to commission on the resulting sale. In effect the court held that when an owner sees fit to vary the terms he has given the broker, the broker is entitled to the benefit of that variance if a sale to the broker's interested prospect results. In short, the broker had fulfilled his contract by producing a customer ready, willing and able to

purchase on terms satisfactory to the owner. In *Swan* the sale hinged upon price and nothing else. In the instant case the plaintiff failed to interest the buyer at any price or on any terms. He was unable to stimulate an inspection of the property or any negotiation between the parties. He had nothing to do with working out the many details which made possible a meeting of the minds. In the instant case price was only one of many factors on which the ultimate sale depended. We are satisfied that the court would have reached a different result in *Swan* if in that case the broker had not awakened a lively interest on the part of the buyer and in a very real sense brought the parties together.

There is a further reason for our conclusion that the plaintiff cannot recover in such a case as this. We think a sound and applicable rule of law was well and correctly stated in 8 Am. Jur. 1069, Sec. 144, in these words:

> "If a broker, after introducing a prospective customer to his employer to no purpose, abandons his employment entirely, or if, after procuring a person who proves to be unwilling to accept the terms of his principal, he merely ceases to make further endeavors to negotiate a deal with that particular individual and all negotiations in that direction are completely broken off and terminated, he will not be entitled to a commission if his employer subsequently renews negotiations with the same person, either directly or through the medium of another agent, and thus effects a sale without further effort on the part of the broker first employed. If, however, upon the resumption of the negotiations, the principal recognizes the broker's agency as continuing, by employing him as the medium for such reopening, his right to commission on the consummation of the sale is complete."

The effect of abandonment has been universally regarded as defeating the broker's claim to a commission upon a subsequent sale by the owner to the person who was abandoned

as a prospect by the broker. See cases cited in Annotations in 9 A. L. R. 1194 and 27 A. L. R. (2nd) 1402. In *Dawson* v. *Norris* (1954), 108 A. (2nd) (D. C.) 538, the court applied the recognized rule of abandonment to facts bearing a striking similarity to those of the instant case. In *Dawson* the broker saw the prospect but once. The latter expressed a complete lack of interest in purchase. The broker never again made any effort to interest the prospect. Later the owner commenced negotiations directly with the prospect and by persuading him that the cost of repairing a roof would be substantially less than the buyer had assumed, he aroused an interest in purchasing the property which culminated in a sale. With respect to abandonment the court said at page 540: "Here the record does not show that the broker ever interested Williams in the property. Even if it could be said that Norris first interested Williams in the property as a prospective purchaser, his failure to communicate with him or attempt to further induce him in any way was a clear abandonment of Williams as a purchaser." So in the instant case the plaintiff acknowledged that he saw the buyer but once. Of that occasion and his subsequent attitude and conduct he testified on cross-examination:

> "I went to see Mr. Porteous once, and Mr. Porteous was so emphatic he wasn't going to buy another house, he had plans, he was proceeding with revamping of his home, I felt it was a *waste of time. He had made his decision; that was it.*" (Emphasis ours.)

This evidence permits of only one interpretation. The plaintiff abandoned Mr. Porteous as a prospective purchaser. His subsequent conduct is entirely consistent with the concept of abandonment. When later the plaintiff received an authorization from the defendant to offer the property at a reduced price, it did not occur to the broker to communicate this new offer to Mr. Porteous. When after a lapse of over five months the defendant sold the property by his

own efforts to Mr. Porteous, he was under no obligation to pay a commission to the broker.

In view of our decision, it becomes unnecessary to consider or discuss alleged errors in rulings by the presiding justice below.

In accordance with the provisions of M. R. C. P. Rule 50(c), the entry will be

> *Appeal sustained. Judgment for the defendant notwithstanding the verdict.*