## Emile BOUCHARD

v.

## Lawrence W. PENNELL.

Supreme Judicial Court of Maine.

Sept. 6, 1967.

---

Walter E. Foss, Jr., Portland, for appellant.

Berman, Berman, Wernick & Flaherty, by Theodore H. Kurtz, Portland, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

WEBBER, Justice.

Plaintiff real estate broker was awarded a jury verdict for commission on the sale of land in Brunswick by defendant to Standard Romper Co. (hereinafter called Standard). Defendant seasonably moved for a directed verdict and after verdict moved for judgment n.o.v. Defendant's appeal from judgment raises the issue as to whether the evidence, viewed in the light most favorable to the plaintiff, will support the verdict.

There is no serious dispute as to material facts. In September, 1964 the plaintiff knew that Standard was considering the erection of a new plant and would require at least ten acres of land for that purpose. He also knew that defendant and his sister owned land which might be adequate for the purpose. He called defendant and asked him to come to his office. When the defendant did so, plaintiff urged him to consider selling his land, telling him he thought he could get him a good price. Defendant promised to discuss the matter with his sister and report back. On the same day the defendant called the plaintiff and, in the plaintiff's words, told him "it was all right for me to go ahead and work on it." Also on the same day he showed this property and another unrelated property to a Mr. Morneau, local plant manager for Standard. Mr. Morneau told him that when the company president came to town, they would go and see the property.

On a later occasion the plaintiff entered the defendant's store to buy clothing. The defendant asked him "how it was getting along." Plaintiff told him he "was very much enthused about the whole thing, that the people was very much interested and that was the best piece of land they had looked at in the vicinity of Brunswick." Plaintiff further stated, "You never can tell what these big corporations will do, one day they are not interested and the next day, bang, they buy."

Some time in the following spring the plaintiff called on Mr. Morneau again and "asked him how things were going and if they had made any definite plans." His testimony as to Mr. Morneau's reply is as follows: "He stated to me that the Town of Brunswick had offered him one piece of land along a commercial section for $1 but the land was too small, they were still very much interested in the land that I showed him, and I'm speaking of Mr. Pennell's land. And he assured me at that time and that was the last time I talked with him on it, he assured me the president of the company would be in town in two or three

weeks and he said when he comes we will go over and show it to him."

Mr. Morneau, called as a witness for plaintiff, testified that he was Standard's local plant manager; that he was interested in persuading his company to construct a new plant; that he had no authority from his company to deal with any broker regarding a site but rather had received express instructions to deal only through the Town of Brunswick and the Chamber of Commerce; that acting on his own he did go with the plaintiff to see the defendant's land; that no price was quoted; that he did not then discuss this lot with the "company" partly because he took it for granted the price would be too high and partly because he had felt that the land was located on the wrong side of Brunswick (having in mind the employment of persons from the Bath area); that on one occasion he pointed the land out to his superior, a vice-president, as they rode past it but the latter did not stop to investigate or express any interest; that when a Mr. Shulman (acting in the interests of the town) suggested defendant's land as a possibility and gave an opinion that it might cost around $20,000, the president and vice-president became interested enough to come from Rhode Island to see it; that they went to the land in the company of Mr. Shulman and the town manager; that in consultation with their own engineers and with local engineers the officers of the company satisfied themselves of the feasibility of the location; that the president upon viewing the property did not think "the distance away (from Bath) would matter too much;" and that the president then negotiated for a purchase, took an option and made a deposit.

█ It was essential to the plaintiff's recovery that he be able to show that he was the "effective and producing cause" of the sale. MacNeill v. Madore, (1957) 153 Me. 46, 47, 134 A.2d 476. To have earned his commission the broker must have "produced to the seller a ready, willing,' and

able buyer upon the authorized terms." Gerstian v. Tibbetts, (1946) 142 Me. 215, 218, 49 A.2d 227, 228. "The word 'produce' or its equivalent is one commonly employed by courts in expressing what is expected of a broker who claims a commission. In the ordinary situation the broker finds the prospect and awakens his interest in the client's property. If he finds such an interest already existing, he attempts to increase it. His efforts bring about a meeting of owner and prospect and an inspection of the premises to be sold. He stimulates negotiation as to price and terms and often accepts for his client a payment to bind the bargain and a memorandum evidencing the customer's commitment to the sale. We do not suggest that all such efforts and accomplishments must be shown in order that a broker might prove himself entitled to compensation. We are satisfied, however, that it would be most unusual for a broker to be able to demonstrate himself to be the 'effective and producing cause' of a sale when it appeared that he had never done any of these things or anything reasonably equivalent thereto." Nisbet v. Linberg, (1961) 157 Me. 61, 64, 170 A.2d 148, 150.

█ Assuming that the plaintiff obtained an "open listing" of this property from the defendant, his subsequent activities fell far short of fulfilling even the minimum requirements of successful brokerage. He showed the property but once and then only to an employee who possessed no authority to speak or act for his company and who was in fact under direction not to deal for the company with any broker. No information passed through the hands of this employee to the officers of the company to awaken their interest in the property. The plaintiff, having obtained no asking price from the seller, could quote none to a prospective purchaser. Not having received any offer from Standard, plaintiff could communicate none to the defendant. The plaintiff was unsuccessful in procuring a meeting of the seller with the prospective purchaser or

any conversations or negotiations between them. The interest of the responsible officers of Standard was first aroused many months later when it had become apparent that land available as a gift from the local industrial development group was not suitable and when Mr. Shulman, acting as a public spirited citizen and upon his own knowledge, recommended defendant's property and suggested that it might be purchased at a price which the company deemed attractive. The activities and representations of Mr. Shulman produced the first inspection and investigation of the property by company officers and led directly and immediately to negotiations resulting in purchase. The activities of the plaintiff were neither effective nor productive at this stage in either bringing the parties together or causing a sale to result. Only through the intervention and influence of Mr. Shulman did Standard become an interested prospective purchaser "ready" and "willing" to buy defendant's land on terms which were mutually satisfactory.

Cases relied upon by the plaintiff are readily distinguishable.

In Morrill v. Farr, (1931) 130 Me. 384, 156 A. 383 the only issue considered by the court was whether or not the evidence presented would support a finding of implied contract of employment. No issue was tendered with respect to plaintiff's performance. The opinion assumes that the plaintiff produced the purchaser and that if he had an implied brokerage contract, he was entitled to his commission. The "contract" issue is not presented in the instant case. We are concerned only with the sufficiency of evidence of the plaintiff's performance.

In Jordan v. Hilbert, (1932) 131 Me. 56, 158 A. 853 the broker gave the prospective purchaser a description of the property, the asking price and the name and address of the seller. The interest of the purchaser was immediately awakened and direct negotiations between seller and buyer were forthwith initiated. The issue here was not whether or not the broker produced the purchaser but rather whether or not the seller was liable for a commission if he had not been informed by the broker of the latter's contact with the prospective buyer. The case holds only that the broker will not be deprived of his commission by the fact that the owner did not know of his instrumentality in procuring the purchaser unless by failing to inform him, the broker permits the owner through ignorance of the fact to (a) pay a commission to another broker, or (b) accept a lower price for the property on the assumption that the sale would be commission free. Here again it suffices to say that the issues tendered were not those which are controlling in the instant case.

"Procuring cause" was the issue in Maine Lakes and Coast Corp. v. Jones, (1952) 147 Me. 457, 463, 88 A.2d 141. In this case, however, there were numerous contacts between the broker and each of the parties. He communicated an offer and a counter offer. He showed the property to the purchaser on two occasions. It is apparent that the broker awakened a lively and continuing interest on the part of the purchaser which resulted in direct negotiations between buyer and seller culminating in a sale. The jury could properly have concluded that a conveyance by the owner to the purchaser's sister followed the same day by a reconveyance to the purchaser was a mere subterfuge designed to avoid payment of an earned commission. The court said: "One of the important questions of fact is whether or not the plaintiff broker in this case was in fact the procuring cause of the purchase of his principal's property. That is a question of fact and not of law." This statement of the applicable law presupposes that there is sufficient evidence which, if believed by the jury, would support the requisite finding of fact. The finding of a requisite fact in the absence of supportive evidence is of course an error of law. In contrast to the situation in the case before us, there

was ample evidence in Main Lakes to support a jury finding that the broker was the "procuring cause".

The factual situation in the instant case far more closely resembles those presented in Gerstian v. Tibbetts, supra, MacNeill v. Madore, supra, and Nisbet v. Linberg, supra, in none of which did the broker demonstrate that he was the "effective and producing cause" of the sale.

The entry will be

Appeal sustained.

Judgment for the defendant notwithstanding the verdict.