**Richard N. BEDARD, Sr., d/b/a Saco Falls Realty**

v.

**Edward PELLON, et al., d/b/a F.E.S. Associates.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 16, 1992.

Decided April 15, 1992.

Patrick S. Bedard, Eliot, for plaintiff.

Brett D. Baber, Rudman & Winchell, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

Plaintiff Richard N. Bedard, Sr., d/b/a Saco Falls Realty, appeals from the judgment entered in Superior Court (Washington County, *Alexander, J.*) granting a directed verdict for defendants Edward Pellon and Sherwood Chandler, d/b/a F.E.S. Associates. We agree with Bedard that the evidence was sufficient for the jury to decide whether he was the procuring cause of the sale of the defendants' property, thus entitling him to a broker's commission. Accordingly, we vacate the judgment.

Stanley Bailey, a broker working for Bedard at Saco Falls Realty, had a conversation with Edward Pellon about the sale of the Clipper Sub and Pub Restaurant. Pellon told Bailey that "if you want to sell it, just bring me a buyer for $195,000 and I'll take it from there." Saco Falls Realty thereafter began to include the restaurant in its list of properties for sale. Some prospective buyers, Kenneth Brooks–Holmes, his wife Nancy Holmes, and Arthur and Gail McAvoy, contacted Bailey and expressed interest in the restaurant after seeing it on the Saco Falls Realty listing sheet. When Bailey called Pellon to arrange a showing of the restaurant, Pellon stated that he and his co-owner, Sherwood Chandler, wanted to raise the asking price to $275,000. Despite the increase in price, the prospective buyers remained interested and Bedard arranged a showing of the restaurant with both Pellon and Chandler. Bedard acted as the broker for the showing and obtained information on the property for the prospective buyers.

Bedard prepared a contract offer from the prospective buyers for $260,000, which included a $25,000 broker's commission. Bailey met with Pellon and Chandler to discuss the offer, and they said that they would think about it and get back to Bedard. After not hearing back, Bedard called them and the defendants said that they still had not reached a decision. With no response from the defendants on the offer, Saco Falls Realty eventually returned the earnest money deposit to the prospective buyers, but continued to list the restaurant for the defendants.

On March 13, 1989, Bailey wrote to the defendants after hearing that two of the prospective buyers, Kenneth Brooks–Holmes and Nancy Holmes, were purchasing the restaurant. Bailey emphasized that Saco Falls Realty should be involved in the sale. Neither Pellon nor Chandler responded to Bailey's letter. On May 17, 1989, Downeast Cranberries, Inc., a corporation owned by the Holmeses, purchased the property for $300,000. Neither Bedard nor Bailey was involved in the final negotiations that led to the sale of the restaurant. Bedard thereafter filed a complaint in Superior Court against the defendants for breach of contract and *quantum meruit.* At the close of the evidence, the court granted the defendants' motion for a directed verdict.

In reviewing a directed verdict, we consider the evidence and every justifiable inference from the evidence in the light most favorable to the party against whom the verdict is directed. *Baker v. Mid Maine Medical Center,* 499 A.2d 464, 466 (Me.1985). If by any reasonable view of the evidence a verdict for the plaintiffs could be sustained, the granting of a directed verdict is reversible error. *Id.*

Maine law will imply a promise to pay a broker's commission on "open" listings if the broker produces to the seller "a ready, willing, and able buyer upon the authorized terms." *See, e.g., Gerstian v. Tibbetts,* 142 Me. 215, 49 A.2d 227 (1946). It is not enough that a broker has introduced the owner to the eventual buyers; essential to the plaintiff's recovery is that the broker "was the 'effective and producing' cause of the sale." *Bouchard v. Pennell,* 232 A.2d 800, 802 (Me.1967) (quoting *MacNeill v. Madore,* 153 Me. 46, 47, 134 A.2d 476, 477 (1957)).

In *Nisbet v. Linberg,* 157 Me. 61, 64, 170 A.2d 148, 150 (1961), we identified some of the factors for the trial court to consider:

The word "produce" or its equivalent is one commonly employed by courts in expressing what is expected of a broker who claims a commission. In the ordinary situation the broker finds the prospect and awakens his interest in the client's property. If he finds such an interest already existing, he attempts to increase it. His efforts bring about a meeting of owner and prospect and an inspection of the premises to be sold. He stimulates negotiation as to price and terms and often accepts for his client a payment to bind the bargain and a memorandum evidencing the customer's commitment to the sale. We do not suggest that all such efforts and accomplishments must be shown in order that a broker might prove himself entitled to compensation.

The court in *Nisbet* did not allow the broker to recover because he had only contacted the buyer once and "failed to awaken in him any interest whatever." *Id.* at 65, 170 A.2d at 150.

 From the evidence in this record, however, a jury could find that Bedard is entitled to a broker's fee from the sale of the restaurant. Bedard listed the defendants' property and the buyers responded to that listing. Bedard showed the property to the buyers while the owners were there, and secured a preliminary offer to purchase. The owners cannot avoid liability by holding that offer and completing negotiations without the broker's participation. Bedard may be entitled to a broker's commission even though he had no direct involvement in the eventual sale of the restaurant. *See Swan Co., Inc. v. Cook*, 143 Me. 109, 112, 55 A.2d 878, 878–79 (1947) (broker entitled to a commission as the procuring cause of the sale even though the owner negotiated directly with the buyer on the sale of the property). *See also* 12 Am.Jur.2d *Brokers* § 224 (1964)

(The fact that the owner has negotiated the sale does not prevent the broker from being regarded as the procuring cause of the transaction.). Bedard was entitled to the jury's determination whether he was the procuring cause of the sale of the property. In addition, the evidence was sufficient for a jury to determine the amount owed. In the absence of an agreement fixing the compensation for a broker's services, the broker is entitled to the usual and customary commission, or a reasonable fee. *See* 12 Am.Jur.2d *Brokers* § 161 (1964).

Because we are unable to reinstate a jury verdict in this case, we remand to the Superior Court. We have stated repeatedly that a directed verdict should be granted sparingly, and unless a court is convinced that there is no factual issue to be resolved, the jury should be given an opportunity to return a verdict. *See Reed v. Rule*, 376 A.2d 445, 446 (Me.1977); *Brewer v. Roosevelt Motor Lodge*, 295 A.2d 647, 650 (Me.1972); *Moore v. Fenton*, 289 A.2d 698, 700 n. 1 (Me.1972). A presiding justice retains the right to enter a judgment notwithstanding the verdict; at the same time, allowing a jury to return a verdict eliminates the need for a second trial if error is found in the trial court's ruling. *See Reed v. Rule*, 376 A.2d at 446.

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.