### HENRY C. ORR *versus* ISAAC L. SKOFIELD.

Any charge of dishonesty against an individual, spoken of him in connection with his business, whereby his character in such business may be injuriously affected, is actionable.

The plaintiff alleged that the defendant did utter and publish, &c., the following false, scandalous and malicious words of and concerning the plaintiff in his capacity as a shipmaster, and of and concerning the business and calling of the plaintiff in his capacity of shipmaster, to wit, "he (meaning the plaintiff,) sold the consignment of the ship Rising Sun," (of which he was then master,) "and pocketed the money."— *Held,* that the words were slanderous if not true.

ON EXCEPTIONS.

CASE, for that whereas the plaintiff is, and from his youth has been, of good reputation among his neighbors and fellow citizens, for honesty and propriety of conduct, and hath been wholly free from the atrocious crime of stealing, and hath never been convicted or suspected to have been guilty of that crime, and for more than ten years last past hath been master of a vessel, and entrusted by the owners thereof with the command, care and control of the same, and was, during the year 1867, master of a ship called Rising Sun, and had the care, command and control of said ship, and hath always honestly and faithfully discharged his duties as master of said vessels of which he has had command, and especially of said ship Rising Sun, and hath always justly and faithfully accounted for all sums of money received by him, in his capacity of master of said vessel, to

the owners thereof:—Nevertheless, the said defendant, not being ignorant of the premises, but fraudulently, maliciously and wickedly contriving to injure, blacken and defame the plaintiff in his good fame and reputation, and to injure him in his calling and business as a shipmaster, and to impose him to the pains and penalties prescribed by law for stealing and embezzlement, did on divers days and times during the year eighteen hundred and sixty-seven, at Brunswick, aforesaid, in presenc of divers good citizens of this State, and in conversation with the same, with a loud voice did speak, utter, publish and declare in the following false, scandalous and malicious words, of and concerning the plaintiff, to wit, he, meaning the plaintiff, sold the consignment of the ship Rising Sun, meaning the consignment of the vessel of which the plaintiff was then master, in St. Thomas, for seven hundred dollars, and pocketed the money, meaning that the plaintiff was thereby guilty of larceny by embezzling and fraudulently converting to his own use the property of another, and under his care by virtue of his employment as master of said vessel, by means of which false and scandalous words, the plaintiff has been much injured in his good name and reputation, and is now and has been exposed to a prosecution for stealing, and has been much injured in his business as shipmaster, and has been thrown out of employment, suffered great anxiety of mind, and has lost situations and employment in the command of divers vessels which he would otherwise have received, and by which he would have earned and received large sums of money, to his damage, as he says, in the sum of ten thousand dollars.

The plaintiff had leave to amend by adding after the words " in the following false, scandalous and malicious words of and concerning the plaintiff," the words " and of and concerning the plaintiff in his capacity of shipmaster, and of and concerning the business and occupation of the plaintiff in his capacity as a shipmaster." And thereupon the defendant demurred, and the plaintiff joined the demur-

rer. The presiding Judge overruled the demurrer and the defendant alleged exceptions.

*W. L. Putnam*, in support of the demurrer.

Innuendoes of embezzlement and larceny, there being no proper averments with which they can connect themselves, add nothing to the declaration. *Emery* v. *Prescott*, 54 Maine, 389; *Brown* v. *Brown*, 14 Maine, 317.

The whole legal force of the counts is in the words "sold the consignment of the Rising Sun, in St. Thomas, and pocketed the proceeds."

In no event do these words import a crime; because, if they amounted to an allegation of embezzlement, embezzlement is a crime only by statute law, which it is not shown has any corresponding statute or law at St. Thomas, and besides, there is nothing to show that money received for the sale of the consignment of the ship would be the money of the owners, so that it could be the subject of embezzlement.

The breach of duty, if any, would be in the sale of the consignment, and not in applying to his own use the proceeds, which would not be the property of the owners; though, as a result of his breach of duty, he might be accountable for the same or a much larger amount.

Disregarding, then, the innuendo, is there anything actionable in the words charged?

The innuendo would indicate that the plaintiff considered the language used as equivalent to a charge of fraudulent disposal of property, — that is, an unauthorized sale of the vessel or some portion of the cargo.

Clearly it cannot have any such meaning, — at least not without additional facts alleged on the record.

It may be supposed that it means an unlawful combination with some broker or merchant, by which the accounts of the vessel were placed in his hands.

But the language on record does not thus define it?

Clearly the plaintiff thought it not sufficient, or he would not have attempted to define it, as he did.

But, if the first clause of the allegation, to wit, "sold the consignment," is construed as meaning that plaintiff arranged with some broker or merchant that he should take the ship's account for a consideration, there is nothing alleged to show that that would be improper; and indeed it is a common thing, where there are at particular ports certain fixed percentages for making disbursements, &c., and considerable rivalry among brokers, to agree that the account shall be paid for by return commissions or otherwise, to be credited to the ship by the master.

Nor does the addition of the words "pocketed the money," help the writ. It might be the captain's duty at a foreign port actually to "pocket" money or its representative, as it would also be his duty at some future time to account for it. Had the allegation been that he pocketed the money and had fraudulently not accounted for it, the case would stand differently.

The word "pocketed" is perhaps an equivocal word, which for legal accuracy should be explained by an innuendo or otherwise; but here the innuendo, if considered as used for that purpose, gives to the allegation a meaning it will not bear without something further on the record.

The allegation is more equivocal than it was in *Tibbets* v. *Goding*, 9 Gray, 254; *Carter* v. *Andrews*, 16 Pick., 1; *Brown* v. *Brown, ante; Bloss* v. *Tobey*, 2 Pick., 330.

*Shepley & Strout,* for the plaintiff.

APPLETON, C. J. — The plaintiff is a shipmaster, and has brought this action against the defendant for saying of him, "that he sold the consignment of the ship Rising Sun, (of which he was then master,) and pocketed the money," "by means of which false and scandalous words," the plaintiff "has been much injured in his business as shipmaster, and has

been thrown out of employment, suffered great anxiety of mind, and has lost situations and employment in the command of divers vessels which he would otherwise have received, and by which he would have earned large sums of money," &c., &c.

By an amendment, these false and scandalous words are alleged to be spoken "of and concerning the plaintiff in his capacity as a shipmaster," and "of and concerning the business and calling of the plaintiff, in his capacity of shipmaster aforesaid."

As the declaration now is, the words are spoken of and concerning the plaintiff in his capacity as a shipmaster. Words not actionable in themselves become so by being spoken of one filling an office or carrying on a particular vocation, when spoken of him in such office or vocation. So, words in themselves not actionable may become so by reason of some special damage occasioned by them. *Brown* v. *Trundy*, 31 Maine, 321; *Harris* v. *Burley*, 8 N. H., 256. "Whatever words," remarks BAILEY, J., in *Whittaker* v. *Bradley*, 16 E. C. L., 310, "have a tendency to hurt, or are calculated to prejudice a man, who seeks a livelihood by any trade or business, are actionable." The words, which constitute the plaintiff's ground of action, being spoken of here in relation to his business, are calculated to prejudice him in his business, and, as the defendant by his demurrer admits, have so prejudiced him. Any charge of dishonesty against an individual, in connection with his business, whereby his character in such business may be injuriously affected, is actionable. *Fowles* v. *Bowen*, 30 N. Y., 20. "The principle is well settled," observes JEWETT, J., in *Kinney* v. *Nash*, 3 Coms., 177, "that, to maintain an action for words spoken, the words must either have produced a temporal loss to the plaintiff, &c., or they must impute some matter in relation to his particular trade or vocation, and which, if true, would render him unworthy of employment." Applying to the words spoken their ordi-

nary meaning, we cannot doubt that they are slanderous of the plaintiff in relation to his business, if untrue.

*Exceptions overruled.*

DICKERSON, BARROWS, DANFORTH and TAPLEY, JJ., concurred.