PARKER L. SPOFFORD
*vs.*
MAYNARD D. GENTHNER D/B/A
THE WALDOBORO PRESS

Lincoln.   Opinion, September 20, 1960.

*Harold J. Rubin,* for plaintiff.

*Goodspeed & Goodspeed,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ.   Dubord, J., did not sit.

SULLIVAN, J.   In March of 1959 the plaintiff commenced this action of libel against the defendant who filed a general demurrer to the plaintiff's declaration.   The presiding justice sustained the demurrer.   The plaintiff excepted to that ruling and prosecutes his exceptions here.

> "A demurrer is a signed statement in writing filed in a proceeding in court, to the effect that admitting the facts of the preceding pleading to be true, as stated by the adverse party, legal cause is not shown why the party demurring should be compelled to proceed further.   Demurrers are gen-

eral where no particular cause is assigned, and special where the particular defects are pointed out. - - - -"

*State* v. *McNally*, 145 Me. 254, 256.

We recite the alleged facts narrated in the declaration of the plaintiff and, for the purposes of the issues here, conceded by the demurring defendant to be true.

The plaintiff was a licensed, active and successful real estate broker in good repute pursuing that vocation in Waldoboro and the surrounding towns situated in Knox, Lincoln and Sagadahoc counties. He was a town selectman and Chairman of the Board for Waldoboro. To the knowledge of several persons Gertrude B. Rash the owner listed with the plaintiff for sale Hardy Island in Medomak River in Lincoln County. Plaintiff procured for her a customer ready, able and willing to purchase that island and an agreement between such owner and buyer. Millard Creamer a lobster fisherman as tenant at will of Gertrude B. Rash was in possession of the island. Plaintiff did not solicit Creamer to buy the island but after the foregoing agreement was effected notified Creamer of that transaction and served notice upon the latter of the termination of his tenancy. The defendant was aware of all these details and

"wickedly and maliciously intending to injure the plaintiff in his said real estate business and to bring him into insolvency, public scandal, contempt and disgrace"

composed and published

*"concerning the plaintiff and the business of the plaintiff"* (italics ours)

a libelous lead editorial in the newspaper called The Waldoboro Press in large and general circulation in Waldoboro and in the counties of Lincoln and Knox. Because of that libel the plaintiff complains that he has sustained damage

*in his business,* his good name and credit and has been subjected to contempt and disgrace.

So much for "the inducement, or statement of the alleged matter out of which the charge arose."

*Judkins* v. *Buckland,* 149 Me. 59, 63.

We quote, as it is contained in the record of this case, the controversial newspaper editorial together with "the colloquium, or averment that the words were used concerning the plaintiff" and "the innuendo, or meaning placed by the plaintiff upon the language of the defendant." *Judkins* v. *Buckland supra.* It will be especially noted that the words of the editorial are averred to have been used concerning the plaintiff in his real estate business and in his public office. *Barnes* v. *Trundy,* 31 Me. 321, 324; *Orr* v. *Skofield,* 56 Me. 483, 487.

> "ISLE OF HOPE" (meaning the hope of the defendant, Maynard D. Genthner, as expressed in the last sentence of the editorial hereinafter set forth)
>
> "The Press (meaning the newspaper, the Waldoboro Press) "has gathered a few details on the story concerning the little island in the Medomak River" (meaning Hardy Island, so-called). "It seems like a lady from Texas" (meaning Gertrude B. Rash) "owned it at one time and had permitted a local lobster fisherman" (meaning Millard Creamer) "its use for a number of years with the promise of the right to purchase if and when it was sold. However, a local real estate dealer" (meaning the plaintiff, Parker L. Spofford) "found a customer willing to pay a price considerably above what it was understood the island could be bought for and deciding" (meaning he, the plaintiff, Parker L. Spofford, deciding) "that the fisherman" (meaning Millard Creamer) "was a gullible fellow, came up with the idea that a fast but perhaps not wholly ethical dollar could be made" (meaning that he, the said plaintiff, Parker L.

Spofford, could make money for himself quickly by acting in an underhanded manner) "by ordering the fisherman" (meaning Millard Creamer) "off" (meaning that the plaintiff, Parker L. Spofford, conspired to further his plan of making money for himself in a short period of time by ordering the said Millard Creamer to vacate and quit his use and possession of Hardy Island, so-called) "even though no purchase rights to the island had been obtained." (meaning that the plaintiff, Parker L. Spofford, had obtained no agreement for the purchase and sale of said Hardy Island either for himself or anyone else.) "However, alas — the fisherman" (meaning Millard Creamer) "didn't turn out to be quite as dumb as the real estate man" (meaning the plaintiff, Parker L. Spofford) "figured and decided" (meaning the fisherman, Millard Creamer decided) "before moving, to contact the owner," (meaning Gertrude B. Rash) "which eventually resulted in the fisherman" (meaning Millard Creamer) "purchasing the island" (meaning Hardy Island) "which never had been purchased or owned by the real estate man" (meaning the plaintiff, Parker L. Spofford, had never acquired any rights of ownership as agent of the owner, Gertrude B. Rash) "even though a sales price and rental price had been given to the fisherman" (meaning Millard Creamer) "by the real estate dealer" (meaning the plaintiff, Parker L. Spofford, had offered to sell and rent Hardy Island, so-called, to the fisherman, Millard Creamer, at a certain price.)

"It is, of course, easy to see that one could make money much faster by these methods" (meaning that the plaintiff, Parker L. Spofford, could make money much faster by unethical conduct.) "than by really investing money first and obtaining revenue afterwards. However, the fishermen in this area seem to accumulate a certain amount of common sense along with lobsters and we" (editorial we, meaning the defendant, Maynard D. Genthner) "hope that the method" (meaning unethical meth-

od) "used in the real estate business" (meaning the plaintiff's real estate business) "doesn't creep into town business" (meaning town business as transacted by the plaintiff, Parker L. Spofford, in his capacity as Chairman of the Board of Selectmen of the Town of Waldoboro, and as a member thereof.)

All well pleaded allegations of the plaintiff we must treat as true because of the demurrer. *Inman* v. *Willinski,* 144 Me. 116, 118. Mere inspection suffices to confirm that the editorial memorializes imputed conduct of the plaintiff in his vocation as a real estate agent and purports to depict his character as such.

" - - - 'Whatever words,' remarks Bailey, J., in Whittaker v. Bradley, 16 E. C. L., 310, 'have a tendency to hurt or are calculated to prejudice a man, who seeks a livelihood by any trade or business, are actionable' The words which constitute the plaintiff's ground of action, being spoken of here in relation to his business, are calculated to prejudice him in his business, and, as the defendant by his demurrer admits, have so prejudiced him. - - -"

*Orr* v. *Skofield,* 56 Me. 483, 487.

"- - - Whether or not the language used will bear the interpretation given to it by the plaintiff, whether or not it is capable of conveying the meaning which he ascribes to it, is in such a case a question of law for the court - - -"

*Thompson* v. *Sun Pub. Co.,* 91 Me. 203, 207.

"At the outset, we recognize that the article must be read as a whole, taking into account its wording, the nature and use of headlines, and any other methods employed to give special emphasis in order to determine its natural and probable impact upon the minds of newspaper readers - - - An article is no less defamatory because it accom-

plishes its damaging mission by the use of insinuation. - - -"

*Cross* v. *Guy Gannett Pub. Co.*, 151 Me. 491, 494.

The title of the editorial is a rhetorical device called irony the intendment of which is the opposite of the literal meaning. "Hope" is a reproach and a taunt. It is the frustrated hope that is implied.

A local lobster fisherman had a promise of the first offer of the island from its owner whenever she should elect to sell it. That fisherman is cast as a type of worthy and hardy character pursuing a strenuous and hazardous trade with limited economic reward and somewhat aloof from the worldly sophistication of the business centers.

The real estate dealer hit upon the prospect of obtaining "a fast but perhaps not wholly ethical dollar" from the possibly "gullible" fisherman. "Perhaps not wholly ethical" is palliated language, an understatement in the author's literary style with an all too obvious indirection. The mischievous insinuation conjured up is that the scheme contemplated and entertained was quite dependably unethical.

"A fast - - - dollar" or more popularly "a fast - - - buck" is a concept widely appreciated in contemporary Maine and America. It is slang, a kind of rapid suggestion but, typical of most slang, it is the product of intellectual inertia. The expression like most commonplace colloquialisms is broadly inclusive. Such a dollar is attained in a fashion distinguished from the scriptural prescription of eating one's sustenance in the sweat of one's brow. It is easy money. The figure is somewhat of sleight of hand. The dollar is one taken through adroit or "fast" talking. The accent is upon nimbleness of wit rather than upon faithful service rendered or adequate consideration given. It is frequently a dollar appropriated in a selfish fashion without any equivalent *quid pro quo*. The connotation is opprobrious in varying

degrees. One who chances a reputation for exacting "fast" dollars or "bucks" is subjecting himself to being dealt with in caution if not in reluctance.

The coherent effect of the editorial is a recounting in derision of the thwarted efforts of a real estate broker who without authority from the landlord - owner and without legal justification sought to dispossess a humble tenant with the expectation of obtaining a high sale price for the island and a coveted commission for himself. The fisherman assumed by the real estate agent to be uninitiated nevertheless repelled the machinations of the latter and purchased the island directly from its mistress. The fisherman deservedly triumphed. He and his fellow fishermen in his area have evolved a homely but adequately defensive wisdom. Here is a moral discrediting sharp picture and cupidity.

There is finally projected by the editor a "hope" that such unbecoming behavior of the agent will not obtrude itself into his municipal functioning as a town officer. The implication thus generated could hardly be lost upon the normal reader.

The language of *State* v. *Norton,* 89 Me. 290, 294 is very disabusing:

> " - - - Insinuations may be as defamatory as direct assertion, and sometimes even more mischievous. The effect, the tendency of the language used, not its form, is the criterion. The libeller cannot defame and escape the consequences by any dexterity of style.

> " - - - It is not the ingeniously possible construction, but the plainly normal construction which determines the question of libel, or no libel, in written words which are maliciously published. In this case the natural inference from the published language is clearly defamatory."

The plaintiff plies his calling in a district of small communities where people are more intimately known to one an-

other. A good repute is, therefore, all the more essential to him. His vocation is one of reposed trust which must be available to him. This court said in *Devine* v. *Hudgins,* 131 Me. 353, 354:

> "A real estate agent with whom property is listed for sale or exchange *acts in a fiduciary capacity,* if he accepts the proffered employment." (Italics ours.)

In *Soule* v. *Deering,* 87 Me. 365, 368, this court adverted to:

> " - - - that entire good faith and loyality due from a broker to his principal - - -"

Our conclusion is that the printed words, if untrue, are undoubtedly libelous.

*Exceptions sustained.*